[Civ. No. 4510.  Third Appellate District.—April 21, 1932.]

PAUL SOHROKOFF, Plaintiff and Appellant, v. I. G. ZUMWALT, etc., Defendant and Appellant.

C. D. McComish for Plaintiff and Appellant.

U. W. Brown for Defendant and Appellant.

PLUMMER, J.—The complaint filed by the plaintiff in this action set forth two causes of actions: First: For a judgment on overcharges relative to certain dealings had by the plaintiff and his assignors with the defendant. Second: Judgment for damages by reason of being prevented by the defendant from threshing certain crops for which the plaintiff and his assignors had contracts. The plaintiff had judgment for overcharges against the defendant in the sum of $1705.43, with interest thereon at the rate of seven per cent per annum from December 23, 1926, the date of settlement between plaintiff and defendant. Plaintiff was denied judgment on his second cause of action. From the judgment awarding damages, as above stated, against the defendant, the defendant appeals. From the judgment of the court denying the plaintiff relief under his second cause of action, the plaintiff appeals.

In addition to what we have stated, the plaintiff claims that there should be added to the judgment awarded him on his first cause of action the further sum of $500.

The record shows that the plaintiff and A. D. Melnikoff, in their individual names, had a series of transactions with the defendant. In these transactions they signed at least

six contracts and notes running in favor of the defendant. While the record does show that some other persons were interested in the farming operations carried on by the plaintiff and A. D. Melnikoff, it shows that all of the business transactions were carried on in the name of the two persons which we have just mentioned, and that all the transactions had with the defendant were had in the names of the two persons just mentioned.

The first point made for reversal by the appellant is that the plaintiff and others were doing business under fictitious names, and had not complied with the provisions of sections 2466 and 2468 of the Civil Code. While the record does show that there was some sort of agreement between the Russians relative to their farming operations, the testimony amply supports the finding of the court that no business was transacted under a partnership name or under any fictitious name, but that all the business was transacted by and in the names of Paul Sohrokoff and A. D. Melnikoff.

The testimony and the record are conflicting as to the $500 item which the plaintiff claims should have been allowed, and under such circumstances we cannot hold that there was any error in the finding of the court. On the part of the plaintiff it was contended that an assignment of a certain account in the sum of $500 by the plaintiff to the defendant was taken as a payment by the defendant. On the part of the defendant it is contended that the assignment of the account was taken only for collection and that the amount was never collected. It appears that a certain person by the name of Moore owed the plaintiff and his assignors on an unpaid bill for harvesting corn, and that this bill or account was assigned to the defendant.

The plaintiff's appeal from the denial of judgment on his second cause of action appears to be without any substantial merit. The only reason assigned for reversal is the contention that the defendant agreed to allow the plaintiff and his assignors until November 1, 1926, in which to make payment for certain threshing machinery. The indebtedness for the machinery was evidenced by certain promissory notes which were already due. While it does appear that the defendant did agree to allow additional time within which payment might be made upon the notes and conditional con-

tract under which the defendant had sold the threshing machinery, it appears that the agreement was not binding for want of consideration, the plaintiff only paying to the defendant a part of the money which was already due.

The record shows that in the transactions had between the defendant and Paul Sohrokoff and A. D. Melnikoff, a somewhat lengthy book account was incurred; that an indebtedness was created in favor of the defendant in the sum of several thousand dollars; that in the transactions there was purchased from the defendant a grain harvester, a bean harvester, cultivators and supplies for the machinery just mentioned, such as gasoline, oils, etc. During the course of the transactions between the parties just mentioned, the grain and beans or crops raised by the plaintiff and his assignors were turned over to the defendant, and also payments were made to the defendant of considerable sums of money; that during the course of the dealings to which we have referred, the defendant took possession of both the bean harvester and also the grain harvester, and made repairs thereon, and sale thereof to other persons. In these transactions the defendant entered upon his books charges as follows: "Delivering bean harvester, $60.00; painting harvester, $25.00; repairs on harvester, $62.15; 10% for selling harvester, $300.00; overcharge on bean cultivator, $25.00; rebuilding header and harvester, $794.67; commissions, and 22 trips, $440.00; on delivering bean harvester $52.50; total, $1759.32." From which there was deducted $53.99 as a balance otherwise due the defendant.

The court found that none of these items were proper charges against the plaintiff or his assignors. It appears that during the course of the transactions the defendant made several trips out where the Russians were carrying on their farming operations, and charged the Russians the sum of $220 therefor, or $10 a trip. The record shows that these trips were made at the sole instance of the defendant, and for his own purposes.

The record also shows that when the defendant retook a header and harvester, he proceeded to rebuild the header from a 20-foot to a 24-foot width, and charged the expenses thereof to the plaintiff and his assignors. Likewise, after the defendant took possession of the bean harvester and made a subsequent sale thereof, he proceeded to charge the plain-

tiff and his assignors commissions for making such sale. The appellant claims that the $60 for delivering the grain harvester and $52.50 for delivering the bean harvester, and commissions for selling the grain harvested in the sum of $300, commissions for selling the bean harvester in the sum of $220, and $220 for trips to the Russian ranch, all aggregating the sum of $877.50, should, in any event, be deducted from the $1705.43 awarded to the plaintiff in this action. A simple statement of these facts shows that the trial court was correct in disallowing these items. The record shows that in the settlement had between the plaintiff and his assignors and the defendant in this action, all of these items were charged by the defendant, and settlement made as though the defendant was entitled to payment on account thereof.

The conditional contracts under which the property was sold provided that the defendant might take possession thereof and resell the same at public or private sale, and after deducting all expenses and attorney's fees incurred therein, credit the proceeds upon the notes given for the payment thereof. There is no charge for taking possession of the property, no attorney's fees were incurred, and there is no provision allowing the defendant commissions for making a sale of the property, especially where he made the sale himself.

▮ It is further contended by the defendant that the allowance of interest by the court from the date of settlement was error, and the amount thereof should be stricken from the judgment. In support of this contention the defendant calls our attention to section 3287 of the Civil Code, which we think, however, instead of supporting the defendant's contention, supports the trial court in allowing interest from the date of settlement. Section 3287 of the Civil Code reads: ''Every person who is entitled to recover damages, certain or capable of being made certain by calculation, and the right to recover which is vested in him on a particular day, is entitled to recover interest thereon from that day,'' etc. The items constituting the overcharges in this case are all certain. On the day of settlement, and at the time the plaintiff and his assignors paid to the defendant the full amount, as appeared upon the books of the defendant, including the overcharges, there became vested a right to re-

cover the amount of the overcharges. All the items constituting the total overcharge, as found by the court appeared upon the books of the defendant; were easily ascertainable, and the only issue involved was whether the defendant was entitled thereto.

We do not think the last sentence of the paragraph found in the case of *Perry* v. *Magneson*, 207 Cal. 617 [279 Pac. 650, 652], limits the right of the plaintiff to interest in this case. That paragraph reads as follows: "As to the time from which interest on the amount found to be due should have been allowed, respondent asserts that the trial court was correct in awarding interest from the date of the commencement of the suit, on the theory that the account was not one for damages, but was upon an obligation to pay a certain sum, which obligation must be treated as any other instrument calling for the payment of money. The general rule is that interest is allowable from the time the sum in suit becomes due, if the sum is certain or can be made certain by calculation. The test, then, to be applied in the instant case is whether or not the sum found to be due, was known and admitted by the appellant to be due the respondent." We do not think that the words "admitted to be due" by the appellant, as used in the above quotation, relieves the defendant in this case from his liability to pay interest. The mere fact that the defendant claimed that the respective charges were of amounts due him, when the amounts were fixed and certain, should not be allowed to relieve the defendant of his legal responsibility. Otherwise, the defendant would be allowed to profit by his own false charges. In this case each item of the improper charge is certain. The amount of the improper charges could easily be ascertained by calculation. It requires no testimony to determine the amount of each overcharge. We think this case in principle is similar to the case of *Hind* v. *Uchida Trading Co., Ltd.*, 55 Cal. App. 260 [203 Pac. 1028, 1029]. In that case the question in dispute as to whether the agreement between the parties covered certain charges, such as insurance and freight to Japan, including the cost of tin lining and strapping the parcels in which the sheets of tin were shipped, the court found who was liable for the payment. The amount in that case was certain and fixed. The only question remained, was the sum due. Interest was

allowed on the items. The court said: "Appellant also attacks that portion of the judgment which allows interest on the amounts covered, from the date of the so-called overpayment. There had never been any dispute as to the amounts of these respective payments, and this was admitted at the time of the trial. The only dispute between the parties was whether the amounts so paid were due."

Then, quoting from *Gray* v. *Bekins*, 186 Cal. 389 [199 Pac. 767, 771], appears the following: "The general rule is that interest is liable from the time the sum in suit becomes due, if the sum is certain or can be made certain by calculation." Upon the authority of this case it seems clear to us that the allowance of interest by the trial court on the overcharges made by the defendant should be sustained.

The judgment is affirmed both as to the appeal by the plaintiff and the defendant. Plaintiff will recover judgment for his costs incurred on account of the defendant's appeal, and the defendant will recover costs incurred on account of plaintiff's appeal.

Thompson (R. L.), J., and Preston, P. J., concurred.